J-S34027-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCISCO S. SANCHEZ, JR. | : | No. 1745 WDA 2018 |

Appeal from the Order Entered November 20, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003242-2017

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY McLAUGHLIN, J.:              FILED OCTOBER 15, 2019

The Commonwealth appeals from the order granting a motion to suppress filed by Francisco S. Sanchez, Jr. The Commonwealth argues that the arrest of Sanchez was supported by probable cause. We agree and therefore reverse the order of the trial court and remand for further proceedings.

In June 2017, Sanchez was arrested and charged with possession with intent to deliver a controlled substance, possession of a controlled substance, possession of drug paraphernalia, and resisting arrest.[1] He filed an omnibus pre-trial motion, which included a motion to suppress evidence because the

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 780-113(a)(32), and 18 Pa.C.S.A. § 5104, respectively. The magisterial district judge dismissed the resisting arrest charge following a preliminary hearing.

police lacked probable cause to arrest him. The trial court held a hearing on the motion.

Pennsylvania State Trooper Zachary Del Sordo testified that he graduated from the Pennsylvania State Police ("PSP") Academy in May 2015, and had been a law enforcement officer with the PSP since that time. N.T., 4/17/18, at 7-9. In June 2017, Del Sordo had been temporarily assigned to the PSP's TACET team, which focuses on drug activity in Westmoreland County. Id. at 11-14.

On June 6, 2017, Trooper Del Sordo met with two informants in a parking lot in the Grapeville area of Hempfield Township. Id. at 14-15. Trooper Del Sordo had not previously met the informants. Id. at 33. Trooper Del Sordo testified that he did not recall the names of the informants, and did not investigate their backgrounds prior to relying on the information they provided. Id. at 38. Trooper Del Sordo agreed that the informants were motivated to work with the PSP to "get themselves out of trouble." Id. The informants told Trooper Del Sordo they could arrange a drug transaction with an individual they knew as "Sanchez," whom they described as a "black male." Id. at 15-16, 86. Trooper Del Sordo did not know the nature or extent of the relationship between the informants and Sanchez. Id. at 17.

While Trooper Del Sordo and the informants were in the parking lot, the informants exchanged text messages and phone calls with Sanchez and arranged to purchase illegal drugs from Sanchez at 2536 Brown Avenue in Grapeville ("Brown Avenue Residence"). Id. at 23-26. At least one of the

informants stated the Brown Avenue Residence was his or her residence. Id. at 26. The trooper did not confirm that the informant resided at this address. Id. at 47. The informants set up the drug transaction with Sanchez through text messages and phone calls made in Trooper Del Sordo's presence. Id. at 23. When the communication was through text messages, Trooper Del Sordo read both sides of the text exchange. Id. at 28. Trooper Del Sordo did not recall whether the text messages he read mentioned heroin or cocaine. Id. at 62. If the communication was through a phone call, Trooper Del Sordo heard only the informants' side of the conversation and the informants would relay the remainder. Id. at 55. At around the time of the arranged sale, the informants showed Trooper Del Sordo a text message indicating that Sanchez had arrived at the Brown Avenue Residence. Id. at 28.

While Trooper Del Sordo was directing and observing the informants' drug deal arrangements, other members of the TACET team, including Detective Ray Dupilka, conducted mobile surveillance of the Brown Avenue area. Id. at 71-72. During this surveillance, Detective Dupilka observed an individual standing at the side door entrance of the Brown Avenue Residence and then walking toward the street. Id. Detective Dupilka, who had prior experience with the appellee through other investigations, recognized the individual as Francisco Sanchez. Id. at 74. Detective Dupilka observed a "significant bulge in [Sanchez's] right front pants pocket," which Detective Dupilka characterized as a "sizable rectangular shape object." Id. at 77. Detective Dupilka may have received a communication from Trooper Del

Sordo that told him that the informants received a text message stating that Sanchez was at the side entrance of the Brown Avenue Residence. Id. at 103. Detective Dupilka and Trooper Anthony Arbaczewski approached Sanchez, identified themselves, directed him to the ground, and told him he was under arrest. Id. at 76, 98. Sanchez fled, but was subsequently stopped and arrested. The troopers re-traced Sanchez's flight path, and discovered cocaine, heroin, and a cell phone. Id. at 30.

The troopers did not observe Sanchez using his cell phone, id. at 92, and the Commonwealth did not present the informants' text messages as evidence at the suppression hearing.

The trial court requested that the parties file briefs and the parties did so. The trial court then granted the motion to suppress, finding the police lacked probable cause to arrest Sanchez.[2] The Commonwealth filed a timely Notice of Appeal, and certified that the order granting the motion to suppress "substantially handicapped, if not terminated, its criminal prosecution." Notice of Appeal, filed Dec. 3, 2018.

The Commonwealth raises the following issue:

> 1. Did the trial court commit legal error when it concluded, based upon the totality of the circumstances, that law enforcement lacked probable cause to arrest Francisco Sanchez ("Sanchez" and/or "Defendant") for committing one or more criminal offenses, including, Possession With

_____

[2] Sanchez had also filed a motion to suppress based on an alleged violation of Miranda v Arizona, 384 U.S. 436 (1966). Because the trial court granted the motion to suppress based on a lack of probable cause to arrest, it did not reach Sanchez's Miranda issue.

Intent to Deliver a Controlled Substance and Attempted Delivery of a Controlled Substance, violations of The Controlled Substance, Drug, Device and Cosmetic Act?

Commonwealths' Br. at 6.

The trial court and Sanchez claim the Commonwealth waived its issues on appeal, asserting that the Commonwealth's statement filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) lacked detail and the court was unable to discern the issue.

The Commonwealth's Rule 1925(b) statement raised the following issues:

1. Did the trial court, which relied upon facts which were legally irrelevant to a probable cause determination and factual determinations unsupported by the record, commit legal error when it concluded, based upon the totality of the circumstances, that law enforcement lacked probable cause to arrest Francisco Sanchez ("Sanchez" and/or "Defendant") for committing one or more criminal offenses, including, but not limited to, violations of The Controlled Substance, Drug, Device and Cosmetic Act.

2. Did the trial court commit legal error when it concluded, based upon the totality of the circumstances, probable cause did not exist for law enforcement to arrest Francisco Sanchez ("Sanchez" and/or "Defendant") for other criminal offenses, regardless of whether the other criminal offenses were offenses for which law enforcement ultimately arrested and charged Defendant.

Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b).

We decline to find waiver. The Commonwealth challenged the trial court's determination that probable cause did not exist for the arrest. Such a challenge is clear from the issues presented.

- 5 -

When we review "an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted." Commonwealth v. Brown, 996 A.2d 473, 476 (Pa. 2010). We review the trial court's factual findings to determine whether the findings are supported by the record and review the court's legal conclusions de novo. Id. Where supported by the record, "a suppression court's findings of fact are binding on this Court." Commonwealth v. Coughlin, 199 A.3d 401, 404 (Pa.Super. 2018) (en banc) (citations omitted).

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a Terry[3] stop . . . ; and (3) a custodial detention." Commonwealth v. Mackey, 177 A.3d 221, 227 (Pa.Super. 2017). "A mere encounter can be any formal or informal interaction between an officer and a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." Id. (quoting Commonwealth v. DeHart, 745 A.2d 633, 636 (Pa.Super. 2000)). A mere encounter does not need to be justified by any level of police suspicion. Id. "[A]n 'investigative detention' . . . carries an official compulsion to stop and respond." Id. (quoting DeHart, 745 A.2d at 636). Because an investigative detention "has elements of official compulsion

_____

[3] Terry v. Ohio, 392 U.S. 1 (U.S. 1968).

it requires reasonable suspicion of unlawful activity." Id. (quoting DeHart, 745 A.2d at 636).

"[A] custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." Id. (quoting DeHart, 745 A.2d at 636). A custodial detention "requires that the police have probable cause to believe that the person so detained has committed or is committing a crime." Id.

The Commonwealth concedes Sanchez was subject to a custodial detention, and we agree, as the troopers approached and ordered Sanchez to the ground, and said Sanchez was under arrest. See Commonwealth v. Clinton, 905 A.2d 1026, 1032 (Pa.Super. 2006) ("A police encounter becomes an arrest when, under the totality of the circumstances, the detention becomes so coercive that it is the functional equivalent of an arrest."). We therefore must determine whether probable cause supported the custodial detention.

Probable cause exists where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime." Commonwealth v. Williams, 2 A.3d 611, 616 (Pa.Super. 2010) (en banc) (quoting Commonwealth v. Thompson, 985 A.2d 928, 931 (Pa. 2009)). We do not ask "whether the officer's belief was

- 7 -

correct or more likely true than false." Id. (quoting Thompson, 985 A.2d at 931). "Rather, we require only a probability, and not a prima facie showing, of criminal activity." Id. (quoting Thompson, 985 A.2d at 931) (emphasis omitted; italics added). In making this determination, "we apply a totality of the circumstances test." Id. (quoting Thompson, 985 A.2d at 931).

"[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." Commonwealth v. Clark, 28 A.3d 1284, 1288 (Pa. 1999) (citing Commonwealth v. Luv, 735 A.2d 87, 90 (Pa. 1999)). "[A]n informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." Id. (emphasis omitted).

Further, the Pennsylvania Supreme Court concluded that a "history-less informant" is not akin to an anonymous informant. Brown, 996 A.2d at 478. The Court reasoned that "[i]f the information from an anonymous informant is false, no action against the informant is possible; however, providing false information will have consequences for a known informant." Id. In Brown, in finding it was error to find probable cause did not exist because the affidavit of probable cause did not explain how the confidential informant was deemed reliable, the Court noted that "the totality of the circumstances is a measure of what is there, not what is inferred to be absent." Id.

Here, the trial court found the police lacked probable cause to arrest Sanchez, finding that the informants "were utterly unknown to the investigating officers, either by name or prior relationship and experience," and the informants "did not participate in the criminal activity . . . such as to lend credibility to the information they provided." Trial Court Opinion, filed Nov. 20, 2018, at 6. It noted that the informants' "text messages were not presented as evidence . . . nor were they even preserved in any manner." Id. at 5. The trial court concluded that, considering the totality of the circumstances, "the credibility, reliability and basis of knowledge of the [the informants] was entirely uncorroborated and unsubstantiated." Id. at 8. It further found that "[n]one of the information received by the Commonwealth as a result of the investigating officers' surveillance or other activities together provided more than a reasonable suspicion of criminal activity by [Sanchez]." Id. at 6-7.

We disagree. Here, while in the presence of Trooper Del Sordo, two informants set up a drug transaction with "Sanchez." The transaction was to take place at a specific location, which at least one informant indicated was his or her residence. Trooper Del Sordo reviewed the text messages, and could hear portions of the telephone conversations. Further, the troopers located Sanchez at the specified location, the side door of the Brown Avenue Residence, where one of the informants was said to reside, at the specified time. In addition, Trooper Dupilka recognized the appellee from prior investigations as an individual with the last name Sanchez. Although the

troopers did not recall the names of the confidential informants, they were not anonymous. Moreover, although the text messages were not admitted into evidence, Trooper Del Sordo was present while the informants were scheduling the drug transaction. As the Supreme Court advised, "the totality of the circumstances is a measure of what is there, not what is inferred to be absent." Brown, 996 A.2d at 478. Here, considering the totality of the circumstances, we conclude the troopers had probable cause to arrest Sanchez, that is, there was "a probability" that Sanchez was engaged in "criminal activity." Williams, 2 A.3d at 616.

Order reversed. Case Remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2019