J-A19008-19

J-A19009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERREL JAYNES | : | |
| | : | |
| Appellant | : | No. 2435 EDA 2018 |

Appeal from the Judgment of Sentence Entered December 6, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006380-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERREL JAYNES | : | |
| | : | |
| Appellant | : | No. 2436 EDA 2018 |

Appeal from the Judgment of Sentence Entered December 6, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001351-2017

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED FEBRUARY 06, 2020**

In these consolidated appeals, Jerrel Jaynes challenges the judgment of

sentence entered in the Montgomery County Court of Common Pleas after the

_____

[*] Former Justice specially assigned to the Superior Court.

trial court convicted him of burglary, attempted burglary, and robbery pursuant to a stipulated non-jury trial.[1] After careful review, we affirm.

Jaynes participated in a sophisticated criminal enterprise that was responsible for committing a string of burglaries in Montgomery, Chester, and Delaware counties.[2] This large-scale burglary ring targeted affluent homes in these counties, stealing high value and easily transportable items such as jewelry, designer purses, and cash. The police used cellular phone records, surveillance videos, and DNA evidence to link Jaynes and his confederates to these burglaries.

Following his arrest, Jaynes filed pre-trial motions challenging (a) car stops in Whitpain Township, Pennsylvania and Cherry Hill, New Jersey; (b) the admission of phone records as business records; (c) allegedly unreliable expert testimony; and (d) an allegedly defective search warrant. The trial court addressed these motions during a three-day suppression hearing.

At the suppression hearing, the Commonwealth presented evidence of the contested car stops. First, Sergeant Peter Benedetti of the Cherry Hill, New Jersey Police Department testified he responded to an attempted home invasion and thereafter conducted a search of the neighborhood for suspicious vehicles. During the canvass, Sergeant Benedetti encountered a parked

_____

[1] These appeals were consolidated *sua sponte* by this Court.
[2] The other co-conspirators involved in the criminal enterprise were Kebbie Ramseur, Shron Linder, Ralph Mayrant, and Wasim Shazad. **See** Affidavit of Probable Cause.

vehicle - with its lights off - in a dead-end area of the neighborhood, a quarter mile from where the attempted burglary occurred.

As he approached the vehicle, Sergeant Benedetti observed Ralph Mayrant in the driver's seat and Shron Linder in the front passenger seat. During the encounter, neither of the men could explain their presence in the neighborhood, and so Sergeant Benedetti asked them to step out of the car.

He then placed the men in a police cruiser and conducted identification and warrant checks. Based on his search, Sergeant Benedetti discovered that Linder had an active arrest warrant. As a result, Linder was placed in custody. Thereafter, Sergeant Benedetti entered the vehicle and, in plain view, noticed several high-end watches in the center console and passenger compartments. Officer Benedetti confiscated the watches and impounded the car.

Next, Officer Francis Rippert of the Whitpain Township, Pennsylvania Police Department testified he responded to a report of three shadowy figures in a housing development with flashlights. Following his arrival, he observed a parked car in the development with its lights on. Officer Rippert, without activating his emergency lights, pulled alongside the vehicle.

Officer Rippert testified that he stopped merely to inquire if the occupants were lost. However, as the encounter continued, the driver, Kebbie Ramseur, and his passengers, Jaynes and Linder, exhibited signs of nervousness and provided conflicting explanations for being in the

development. Officer Rippert also noticed that Jaynes and Linder were actively trying to conceal suspicious items between their seats.

This suspicious activity, coupled with Linder's refusal to hand over a bag, led Officer Rippert to believe the occupants were involved in criminal activity. He then had Jaynes and the other occupants removed from the car, handcuffed, and detained near the vehicle.

Following Jaynes's removal from the car, Officer Rippert conducted a warrant check. The encounter eventually ended with the arrest of Jaynes and Ramseur for outstanding warrants. Linder, on the other hand, was free to leave.

In addition, the suppression court addressed Jaynes's claim that the call detail records of his T-Mobile cellular phone should not be admitted as business records under the hearsay exception. Jaynes also argued that his cell phone records - obtained pursuant to a search warrant issued in the state of Delaware - should be suppressed because the warrant lacked probable cause. Moreover, Jaynes argued that the Commonwealth's expert witness, Detective Kerr, was unqualified to testify as to Jaynes's location during the burglaries via cellphone records.

The court denied Jaynes's motions. Immediately after the denial of his motions, Jaynes proceeded to a stipulated bench trial in which the Commonwealth incorporated the affidavits of probable cause for each docket. On Docket 1351-2017, the court found Jaynes guilty of four counts of burglary

and one count of robbery (inflicts serious bodily injury).[3] On Docket 6380-2016, Jaynes was found guilty of one count of attempted burglary.[4] The court sentenced Jaynes to an aggregate sentence of 10 to 20 years' imprisonment on both dockets in addition to restitution. Thereafter, Jaynes filed a post-sentence motion, which the trial court denied. This appeal is now properly before us.

On appeal, Jaynes presents eight issues for our review:

1. Whether . . . [the] [Suppression] Court erred in denying . . . [Jaynes's] Motion in Limine to exclude the introduction of historical cell site data, cell tower range estimates, and the expert testimony of Detective Walter R. Kerr regarding the location of . . . [Jaynes] and his co-defendants based upon historical cell site records because the technology used for these opinions, namely a computer program known as CellHawk is unreliable, unduly prejudicial, and based upon speculation that a defendant is in the "general vicinity" in violation of Pa.R.E., 403, 702, and Detective Kerr lacked the requisite qualifications necessary to offer expert testimony regarding cell phone tracking?

2. Whether . . . [the] [Suppression] Court erred in granting the Commonwealth's Motion to Admit certifications of Call Detail Records ("CDR") of . . . [Jaynes's] T-Mobile cellular phone as a business record pursuant to the hearsay exception in Pa.R.E. 902(11) because T-Mobile does not regularly conduct the business of maintaining CDR records, and . . . [Jaynes's] T-Mobile CDR records cannot be properly authenticated in accordance with Pa.R.E. 901?

3. Whether . . . [the] [Suppression] Court erred in denying . . . [Jaynes's] Motion to [S]uppress evidence seized from . . . [Jaynes's] motor vehicle in the State of New Jersey on May 24,

---

[3] **See** 18 Pa. C.S.A. §§ 3502(a)(2) and 3701(a)(1)(i).

[4] **See** 18 Pa. C.S.A. §§ 3502(a)(2) and 901(a).

2016, and the fruits therefrom, because the warrantless search and seizure of . . . [Jaynes's] vehicle occurred without probable cause, after an unlawful detention of the co-defendants, and the plain view exception was inapplicable in violation of Article I, Section 8, of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution?

4. Whether . . . [the] [Suppression] Court erred in denying . . . [Jaynes's] Motion to [S]uppress evidence from an illegal seizure that occurred on July 18, 2016 of the occupants of motor vehicle without probable cause or reasonable suspicion, illegal warrantless search of the motor vehicle without probable cause, and the fruits obtained therefrom, in violation of Article I, Section 8, of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution?

5. Whether . . . [the] [Suppression] Court erred in denying . . . [Jaynes's] Motion to Dismiss for violation of Pa.R.Crim.P. 600 because the Commonwealth failed to bring . . . [Jaynes] to trial within one year in violation of Article I, Section 9, of the Pennsylvania Constitution, and the Sixth Amendment to the United States Constitution, which guarantee the right to a speedy trial?

6. Whether . . . [the] [Suppression] Court erred in denying . . . [Jaynes's] Motion to [S]uppress evidence from execution of illegal search warrant for . . . [Jaynes's] T-Mobile cell phone records, Delaware search warrant issued on June 13, 2016 not supported by probable cause in violation of Article I, Section 8, of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution, after ruling that the search of co-defendants' [Mayrant's] home was unconstitutional?

7. Whether there was a material misrepresentation in the affidavit of probable cause supporting the search warrant of Detective DiNardo and subsequent December search warrant when it states that there were allegedly seven (7) phone calls made by . . . [Jaynes] on April 1, 2016 near a burglary at 16 Summit Lane, Wilmington, Delaware when the police report shows that the burglary occurred almost three hours past the time that . . . [Jaynes] made a phone call in the Summit Lane area in violation of Article I, Section 8, of the Pennsylvania Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution?

8. Whether there was insufficient evidence and the verdict was against the weight of the evidence to find . . . [Jaynes] guilty of burglary at:

a) [Residence 1] because the testimony failed to demonstrate that . . . [Jaynes] entered the premises with the intent to commit a crime in that it was an empty house, with no evidence that anyone lived there, and nothing was taken from the property?

b) [Residence 2] because the Commonwealth failed to prove that . . . [Jaynes] was involved with the incident in that he was not found in possession of any items from the residences and their case relied upon a cell phone tower ping approximately two miles away?

c) [Residence 3] because there was no evidence, not even from cell-phone towers, that implicated . . . [Jaynes] as being involved with this incident?

d) [Residence 4] because the testimony failed to demonstrate that . . . [Jaynes] was involved with the incident, as it consisted of a single ping of . . . [Jaynes's] phone on a cell-tower two days earlier, no property was found in the possession of . . . [Jaynes], and the co-defendants['] phones had cell-phone tower pings on the date of the incident but not . . . [Jaynes]?

Appellant's Brief, at 6-9.

In his first issue, Jaynes argues that the suppression court erred in denying his motion in limine to preclude Detective Kerr's testimony as an expert witness. **See** Appellant's Brief, at 33. He asserts Detective Kerr lacked the requisite qualifications necessary to offer expert testimony on cell phone tracking technology and data. **See id**., at 35.

The admission of evidence is a matter vested in the sound discretion of the trial court and can only be reversed upon a showing of an abuse of discretion. **See Commonwealth v. Travaglia**, 792 A.2d 1261, 1263 (Pa.

Super. 2002). In determining whether certain evidence should be admitted, the trial court must weigh the evidence and its probative value against the prejudicial impact of such evidence. **See Commonwealth v. Jones**, 683 A.2d 1181, 1193 (Pa. 1996).

Here, Jaynes's claim regarding the admissibility of Detective Kerr's testimony is meritless. Although Jaynes filed a pretrial motion seeking to preclude Detective Kerr as an expert witness, the suppression court deferred ruling on the matter until after voir dire occurred at trial. **See** Trial Court Opinion, 11/6/18, at 11. Thus, contrary to Jaynes's assertion, the suppression court never denied his motion. **See id**. Furthermore, Jaynes elected to have a stipulated bench trial in which Detective Kerr did not testify. **See id**. Therefore, there was no expert testimony admitted at Jaynes's stipulated bench trial. For this reason, Jaynes is not entitled to relief.

Next, Jaynes contends the suppression court erred in admitting call detail records of his cellular phone under the business record exception to the hearsay rule. **See** Appellant's Brief, at 39-40. In particular, he argues that these records, which were captured by a third party cell tower, fell outside T-Mobile's regular course of business and therefore were inadmissible hearsay. **See id**., at 41. Moreover, Jaynes asserts that these records could not be properly authenticated since the information was not prepared by T-Mobile. **See id**., at 40.

Under the Pennsylvania Rules of Evidence, hearsay is an out-of-court statement offered for the truth of the matter asserted. **See** Pa.R.E. 801(c). Generally, hearsay evidence is inadmissible unless it falls within one of the exceptions to the hearsay rule set forth in the Rules of Evidence. **See Commonwealth v. Yarris**, 731 A.2d 581, 591 (Pa. 1999). Rule 803(6) provides the following exception to the hearsay rule for business records:

> **Records of a Regularly Conducted Activity**. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

In addition, Rule 902(11) provides that certifications of a domestic record of a regularly conducted activity is self-authenticating, if the copy "meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of

the custodian or another qualified person that complies with Pa.R.C.P. No. 76." Pa.R.E. 902(11).

The suppression court ruled, and we agree, that the Commonwealth established that the call detail records here were admissible under the business records exception to the hearsay rule. *See* Trial Court Opinion, 11/6/18, at 16-17. The Commonwealth presented a declaration in which the custodian of records at T-Mobile stated that such records were made at or near the time of Jaynes's alleged phone calls. *See* Commonwealth's Motion in Limine, Exhibit A, at 290. These records, according to the declaration, were kept in the regular course of business. *See id*. They were also maintained by T-Mobile as a regular business practice. *See id*. And the declaration verified that the records were either original or copies of the original. *See id*.

Jaynes argues that these records were obtained from the third-party owners of the cell phone towers from whom T-Mobile leases space. *See* Appellant's Brief at 39-41. He contends that under ***Commonwealth v. Simmons***, 548 A.2d 284 (Pa. Super. 1988), information gained from another source must independently qualify for a hearsay exception before it can be admitted as part of a business record.

Ultimately, we conclude that this is a factual dispute concerning how T-Mobile gathers the information used in the call detail records. The Commonwealth presented an affidavit asserting that these records are kept in the normal course of T-Mobile's business. In contrast, Jaynes points to no

evidence, other than his oral argument, to support his assertion that this information was received from a third party. *See* Appellant's Brief, at 20-21. While we acknowledge the Commonwealth bore the burden of establishing that the call detail records were properly admissible, we cannot conclude, on this record, that it was error to admit them. Under these circumstances, it is certainly reasonable to infer that T-Mobile generates these records through its own equipment and software despite the fact the equipment is located on a leased tower.

Therefore, these records were sufficiently authenticated, and Jaynes is not able to establish that the suppression court erred in admitting this evidence under the business records exception. *See* Pa.R.E. 902 (11). No relief is due.

In his third and fourth issues, Jaynes contends the suppression court erred in denying his motions challenging the police interactions in Cherry Hill, New Jersey and Whitpain Township, Pennsylvania. *See* Appellant's Brief, at 42, 47. Specifically, Jaynes contests the search of his car and the seizure of his person during these police encounters. Because Jaynes alleges his constitutional rights were violated on two separate occasions, we address his third and fourth issues contemporaneously.

First, Jaynes claims that the evidence seized from his car in Cherry Hill, New Jersey, should have been suppressed because the police lacked reasonable suspicion to detain his co-defendants, Mayrant and Linder. *See*

Appellant's Brief, at 45. Furthermore, he argues that the subsequent search of his car did not satisfy the plain view exception to the warrant requirement. *See id*., at 46.

In reviewing the denial of a suppression motion, we must determine whether the record supports the lower court's factual findings and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Raglin*, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions *de novo*. *See Commonwealth v. Hughes*, 836 A.2d 893, 898 (Pa. 2003).

A defendant has the burden of establishing his standing to assert a Fourth Amendment violation. *See United States v. Padilla*, 508 U.S. 77, 81-82 (1993). The "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171-72 (1969). Thus, Fourth Amendment rights are personal rights and may not be asserted vicariously. *See Rakas v. Illinois*, 439 U.S. 128, 133 (1978).

In order to successfully challenge a search and seizure, a defendant, like Jaynes, must assert that he has a legitimate expectation of privacy in the premises. *See Government of Virgin Islands v. Williams*, 739 F.2d 936,

938 (3d Cir. 1984).[5] However, a defendant does not have a legitimate expectation of privacy "where the area searched is in the control of a third party." *See id*.

Jaynes contends he has standing to challenge the police encounter in Cherry Hill that subjected his co-defendants, Mayrant and Linder, to an investigative detention. *See* Appellant's Brief, at 45. Notwithstanding his ownership of the car, Jaynes fails to identify any deprivation of his Fourth Amendment rights. Because the rights in question were personal only to Mayrant and Linder, Jaynes cannot vicariously assert the rights of his co-defendants. *See Rakas*, 439 U.S. at 133. Jaynes is merely a person aggrieved by the introduction of damaging evidence and therefore has no standing to challenge the investigative detention.

Even if Jaynes had standing, he failed to establish an expectation of privacy in the vehicle. As the record shows, Jaynes relinquished his car to Mayrant and Linder. *See* N.T., Suppression Hearing, 11/30/17, at 32, 38. In doing so, Jaynes no longer had a legitimate expectation of privacy in the vehicle. *See Williams*, 739 F.2d at 938. Therefore, this challenge is without merit.

Second, Jaynes contends he was illegally detained because police in Whitpain Township, Pennsylvania lacked reasonable suspicion to believe he

---

[5] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." *Kleban v. National Union Fire Ins. Co. of Pittsburgh*, 771 A.2d 39, 43 (Pa. Super. 2001).

was involved in illegal activity. *See* Appellant's Brief, at 47. Indeed, Jaynes argues the police-citizen interaction from the beginning was an investigative detention. *See id*. He also argues that police did not have probable cause to arrest him during the encounter. *See id*.

A police-citizen encounter may implicate the liberty and privacy interests of the citizen as guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Smith*, 172 A.3d 26, 31 (Pa. Super. 2017). Fourth Amendment jurisprudence recognizes three levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *See id*., at 32.

The first of these interactions is a mere encounter, which need not be supported by any level of suspicion, as it carries no official compulsion for a citizen to stop or respond. *See Raglin*, 178 A.3d at 871. The second, an investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not constitute an arrest. *See Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016). Finally, a custodial detention or an arrest must be supported by probable cause. *See Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

The difference between a mere encounter and an investigative detention is whether the individual was seized by the police. *See Commonwealth v.*

*Au*, 42 A.3d 1002, 1004 (Pa. 2012). "[A] person is seized only when, by means of physical force or show of authority, his freedom of movement is restrained." *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980) (internal quotation omitted). To that end, courts must employ a totality of the circumstances approach, with no single factor dictating the ultimate conclusion as to whether there was a seizure. *See Commonwealth v. Strickler*, 757 A.2d 884, 890 (Pa. 2000).

The suppression court found that Officer Rippert's initial interaction with Jaynes was a mere encounter rather than an investigative detention. Upon seeing a parked car with its lights on, Officer Rippert pulled alongside the vehicle and asked if the men were lost. *See* N.T., Suppression Hearing, 12/04/17, at 83. Officer Rippert testified that during his initial interaction with Jaynes he did not activate his lights or prevent the parked car from leaving the scene. *See id*., at 82-83. Nor did he direct Jaynes to exit the vehicle. *See id*., at 83. Accordingly, there is no evidence of any police coercion tending to establish that the interaction was anything more than a mere encounter. *See Mendenhall*, 446 U.S. at 553.

However, we conclude that the encounter subsequently ripened into an investigative detention and ended with Jaynes's arrest. *See* N.T., Suppression Hearing, 12/04/17, at 115, 121. As such, we must determine whether Officer Rippert possessed reasonable suspicion of criminal activity to support the

investigative detention at that time and whether he had probable cause to arrest Jaynes.

To conduct an investigative detention, police must have reasonable suspicion of criminal activity. **See Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa. Super. 2012). Reasonable suspicion arises when an officer has reason to believe that criminal activity is afoot. **See Commonwealth v. Cook**, 735 A.2d 673, 677 (Pa. 1999). Even innocent factors, viewed together, may arouse reasonable suspicion that criminal activity is afoot. **See id**., at 676.

The certified record supports the suppression court's conclusion that Officer Rippert had reason to suspect criminal activity was afoot during the encounter. At the suppression hearing, Officer Rippert testified that the car contained suspicious items such as masks, gloves, and flashlights. **See** N.T., Suppression Hearing, 12/04/17, at 88. He also explained that Jaynes and the other occupants acted extremely nervous and offered conflicting explanations as to their presence in the neighborhood. **See id**., at 100. Additionally, Jaynes's attempt to conceal what appeared to be incriminating evidence along with Linder's refusal to hand over a bag provided further reason to suspect the vehicle's occupants were involved in criminal activity. **See id**., at 85-86. In sum, Officer Rippert had reasonable suspicion to detain Jaynes while running a warrant check on him and the other occupants.

Moreover, Jaynes's assertion that Officer Rippert lacked probable cause to arrest him is meritless. Probable cause exists where the facts and

circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to believe that a suspect, like Jaynes, has committed or is committing a crime. ***See Commonwealth v. Williams***, 2 A.3d 611, 616 (Pa. Super. 2010) (*en banc*). Our inquiry is not based on whether the officer's belief was correct or more likely true than not. ***See Texas v. Brown***, 460 U.S. 730, 742 (1983). Instead, we require only a probability of criminal activity. ***See Illinois v. Gates***, 462 U.S. 213, 235 (1983). In making this determination, "we apply a totality of the circumstances test." ***Williams***, 2 A.3d at 616.

After conducting a warrant check, Officer Rippert discovered that there was an outstanding warrant for Jaynes's arrest in the state of Delaware. ***See*** N.T., Suppression Hearing, 12/04/17, at 121. As a result, Jaynes was placed in custody. ***See id***. In light of the facts and circumstances, Officer Rippert had probable cause to arrest Jaynes at that moment. ***See Williams***, 2 A.3d at 611. As such, Jaynes is not entitled to relief.

Jaynes alleges next that the trial court erred in denying his Rule 600 motion in which he claimed the Commonwealth violated his right to a speedy trial. ***See*** Appellant's Brief, at 48. He argues that, because the court denied his motion without conducting a Rule 600 analysis, the matter should be remanded for further proceedings. ***See id***., at 51.

In reviewing Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. ***See Commonwealth***

*v. Hill*, 736 A.2d 578, 581 (Pa. 1999). The proper scope of review is limited to the Rule 600 evidentiary hearing, and the findings of the trial court. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004). Further, we must view the facts in the light most favorable to the prevailing party. *See Commonwealth v. Jackson*, 765 A.2d 389, 392 (Pa. Super. 2000).

Generally, the Commonwealth must bring a defendant to trial within 365 days of the date the complaint is filed. *See* Pa.R.Crim.P 600(A)(2)(a). However, if trial commences more than 365 days after the filing of the complaint, a defendant is not automatically entitled to discharge pursuant to Rule 600. *See Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015).

Rather, a court must first account for any excludable time and excusable delay. *See Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Excludable time is any period of delay that is attributable to the defendant or his counsel. *See Commonwealth v. Matis*, 710 A.2d 12, 16 (Pa. 1998). Excusable delay, in contrast, is any period of delay that is the result of circumstances beyond the Commonwealth's control despite its due diligence. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. 2007).

Our courts employ a three-step inquiry for evaluating whether there is a Rule 600 violation. We begin by calculating the "mechanical run date," which is 365 days after the complaint was filed. *See Commonwealth v. Wendel*, 165 A.3d 952, 956 (Pa. Super. 2017). Then, we determine if any excludable

time and excusable delay exists. **See id**. And, finally, we add the amount of excludable time and excusable delay, if any, to the mechanical run date in order to compute the adjusted run time. **See id**

The trial court determined, and we agree, that this issue is waived because Jaynes failed to file a written motion to dismiss in compliance with Rule 600. **See** Trial Court Opinion, 11/6/18, at 23; **see also** Pa.R.Crim.P. 600(d)(1) (requiring a defendant to file a written motion and serve a copy on the Commonwealth). "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P.302(a).

Jaynes concedes that he did not file a written motion. **See** Appellant's Brief, at 48. He contends that he orally joined his co-defendant's motion at the hearing. **See id.** The trial court concludes that Jaynes failed to properly raise the issue and that it never addressed the applicability of Rule 600 to Jaynes's circumstances. Our review of the record does not reveal any presentation of evidence or focused argument on the application of Rule 600 to Jaynes.

On this record, we must agree that Jaynes's failed to properly preserve this issue. Rule 600(D)(1) is explicit that a motion raising a Rule 600 claim be in writing. This case is perhaps a perfect illustration of the necessity of the requirement: in the absence of the written motion, neither the court nor the Commonwealth were on notice that Jaynes wished to raise a Rule 600 issue. Consequently, he has waived the issue.

In his next two issues, Jaynes contends the suppression court erred in denying his motion to suppress cell phone records, obtained pursuant to a search warrant issued in the state of Delaware. His first argument is that the search warrant lacked probable cause because the affidavit did not contain any evidence connecting him to the burglaries. **See** Appellant's Brief, at 53. Jaynes's second argument is that the affidavit of probable cause contained a material misrepresentation. **See id**., at 53-54. More specifically, he asserts the affidavit falsely stated that he called a person alleged to be in the process of committing a burglary in Delaware. **See id**., at 54-55.

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution each require that search warrants be supported by probable cause. **See Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012) (citation omitted).

The United States Supreme Court established a "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. **See Jones**, 988 A.2d at 656. The Pennsylvania Supreme Court adopted this test "for

purposes of making and reviewing probable cause determinations under Article 1, Section 8." *Id*. Therefore, under the totality of the circumstances test, the task of an issuing authority is "simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Torres*, 764 A.2d 532, 537 (Pa. 2001) (citation and internal quotation omitted).

Here, Jaynes's claim that the Delaware search warrant lacked probable cause is meritless. The facts set forth in the affidavit of probable cause were sufficient for police to obtain a search warrant for Jaynes's phone records. *See Jones*, 988 A.2d at 656. In the affidavit, police identified Jaynes and other members of the conspiracy as individuals responsible for a string of burglaries. *See* Trial Court Opinion, 11/6/18, at 26. The affidavit also contained information obtained from the cell phone records of Jaynes's co-conspirators that indicated he had been in constant contact with them during at least one burglary. *See id*. Hence, there was a fair probability that evidence of these crimes would be found in Jaynes's cell phone records. *See id*., at 27. As such, he is not entitled to relief.

Additionally, we are unable to grant Jaynes relief on his second argument because he failed to raise his material misrepresentation claim at the suppression hearing. *See Commonwealth v. York*, 465 A.2d 1028, 1032

(Pa. 1983) (stating that appellants are barred from raising "a new and different theory of relief" for the first time on appeal). In fact, our review of the record and his omnibus pretrial motion shows that Jaynes only challenged the probable cause contained within the four corners of the affidavit. **See** N.T. Suppression Hearing, 12/5/17, at 123. While his motion does assert the existence of a discrepancy in the times utilized in the warrant, he did not assert that the discrepancy was a material misrepresentation. Rather, he utilized the discrepancy to bolster his argument that the warrant was not based upon probable cause. To that end, Jaynes's material misrepresentation argument is being raised for the first time on appeal. Therefore, the claim is waived. **See** Pa.R.A.P.302(a)

However, even if the issue were not waived, we agree with the trial court that Jaynes failed to prove the affidavit contained a material misrepresentation. To establish a material misrepresentation, a defendant must prove that the affidavit contained deliberate or knowing misstatements of fact. **See Commonwealth v. Murphy**, 795 A.2d 997, 1006 (Pa. Super. 2002). The question of whether a misstatement was deliberately made is to be decided by the trier of fact, which is permitted to believe all, some, or none of the testimony. **See Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa. Super. 2011). The trial court's determination that there was no credible evidence presented that any information in the affidavit was deliberately or knowingly misleading is supported by the record and does not constitute an

abuse of discretion. **See** Trial Court Opinion, 11/6/18, at 30. Therefore, Jaynes would not have been entitled to any relief.

Finally, Jaynes contends there was insufficient evidence to support his burglary convictions, and the verdict was against the weight of the evidence. **See** Appellant's Brief, at 56. In particular, he challenges his convictions regarding burglaries that occurred at four separate residences: Residence 1; Residence 2; Residence 3; and Residence 4. **See id**., at 56-60.

Initially, we note that Jaynes's argument here is not properly developed because he fails to provide the standards of review for his sufficiency and weight of the evidence claims. **See** Pa.R.A.P. 2111(a)(3); **see also Rettger v. UPMC Shadyside**, 991 A.2d 915, 932 (Pa. Super. 2010). Also, in most places, his argument fails to provide citations to the record or any legal authority, or discussion thereof, in support of his sufficiency and weight of the evidence claims. **See** Pa.R.A.P. 2119 (a), (b), and (c).

The Pennsylvania Rules of Appellate Procedure state unequivocally that each question an appellant raises must be supported by discussion and analysis of pertinent authority. **See Giant Food Stores, LLC v. THF Silver Spring Development, L.P.**, 959 A.2d 438, 444 (Pa. Super. 2008). Failure to do so constitutes waiver of any claim. **See id**. As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007).

Therefore, we find that Jaynes's waived his sufficiency and weight of the evidence claims.

In any event, had Jaynes properly developed his argument, we would still find these issues meritless. The trial court found that the evidence was easily sufficient to support his convictions, and the verdicts were not against the weight of the evidence. *See* Trial Court Opinion, 11/6/18, at 34-37. Based on our review of the evidence, we cannot conclude that the trial court committed an error of law or abused its discretion. And so, these claims merit no relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/6/20

J-A19008-19

J-A19009-19