J-A01015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD CARL ENYEART | : | |
| | : | |
| Appellant | : | No. 731 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 18, 2021
In the Court of Common Pleas of Huntingdon County
Criminal Division at No(s): CP-31-CR-0000144-2020

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED JUNE 02, 2022**

Appellant, Ronald Carl Enyeart, appeals *nunc pro tunc* from the judgment of sentence entered in the Huntingdon County Court of Common Pleas, following his bench trial convictions for driving under the influence of alcohol ("DUI") and driving with a suspended license.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  In the early morning hours of November 12, 2019, around 1:00 a.m., police received a call from Michelle Ayres[2] that her boyfriend, Appellant, was at her home intoxicated and refusing to leave.  Police responded to the call within 10 to 15 minutes and Ms. Ayres indicated that Appellant had already left.  Ms.

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1); 1543(b)(1)(i), respectively.

[2] The record sometimes spells her name as Michelle Ayers.

Ayres did not observe whether Appellant left on foot or by car. Police knew from prior interactions that Appellant lived on top of Johnny's Bar. Police headed in the direction of the bar, which was less than one mile away. Police observed Appellant's vehicle, a white Chevy pick-up truck, in the parking lot of the firehall adjacent to Johnny's Bar. The car was parked crooked, with half of the car on the grass and half of the car on stones. Police observed track marks from the truck which had disturbed the stones. The hood of Appellant's car was not warm, but it also was not cold. The weather on the date in question was cold and misty.

Corporal David Funk did not see Appellant outside the bar, so he approached the door to the upstairs residences. Corporal Funk noticed that the door to the main entrance was practically unhinged and falling off. Corporal Funk entered the main door and began climbing the stairs, initially believing that he was in a common area that would lead to multiple private residences. As he ascended the stairs and was about one-third of the way up, Corporal Funk realized he might not be in a common area because he viewed personal belongings along the stairwell. Thus, Corporal Funk stopped on the stairs, and called out Appellant's name. Appellant responded, and Corporal Funk asked if Appellant would come outside to speak with the officers. Appellant complied and met Corporal Funk outside, where Patrolman Cory Stuller and Officer Andrew Young were also present.

Corporal Funk observed that Appellant was unsteady on his feet, smelled

of alcohol, and was obviously intoxicated. The officers knew Appellant had a suspended driver's license and told Appellant that he should not be out driving. Appellant stated that he was not driving his vehicle and had loaned it to someone else. The officers asked Appellant for that person's name so that they could verify that Appellant had not driven the vehicle, but Appellant could not supply the officers with a name or phone number. Ultimately, Appellant admitted that he had been driving. Corporal Funk attempted to perform field sobriety tests, which Appellant failed. Based on Appellant's bloodshot eyes, slurred speech, flushed face, lack of balance, trouble following directions, and admission to driving, Corporal Funk arrested Appellant.

Police transported Appellant to the hospital, where he refused a blood draw. Police then transported Appellant to the police station, where he was ultimately released to his friend, James Moore.

The Commonwealth filed a criminal complaint 31 days later, on December 13, 2019, charging Appellant with DUI and related offenses. On July 13, 2020, Appellant filed a pre-trial motion seeking to: (1) dismiss the charges under Pa.R.Crim.P. 519(B), where the Commonwealth filed charges against Appellant more than five days after his release from arrest; and (2) seeking suppression of all evidence in the case based on the illegal entry into Appellant's home without a warrant. The court held a pre-trial hearing on August 6, 2020, during which the court heard testimony from Appellant and Corporal Funk and argument from counsel. On August 21, 2020, the court

denied Appellant's motion.

Appellant proceeded to a bench trial on January 29, 2021. The Commonwealth presented testimony/evidence from Ms. Ayres, Corporal Funk, Patrolman Stuller, and Officer Young, describing the events that led up to Appellant's arrest as described above.

In his defense, Appellant presented testimony from Keston Noreiga, who stated that he had borrowed Appellant's pick-up truck on the date in question and was the one driving it in the early morning hours on November 12, 2019. Specifically, Mr. Noreiga stated that he had borrowed Appellant's truck in the past. Mr. Noreiga asked to borrow the truck on the date in question so that he could dispose of large trash bags that were too big for his own vehicle. During the day on November 11, 2019, Appellant had given Mr. Noreiga the keys to the pick-up truck. After attending a Veterans' Day celebration that day, around 1:00 a.m., Mr. Noreiga decided to dispose of his trash using Appellant's vehicle. Mr. Noreiga explained that he has insomnia and is often awake at night, so it was not unusual for him to perform this task in the middle of the night. Mr. Noreiga said he parked Appellant's truck a bit haphazardly because he had to go to the bathroom.

Appellant also testified in his defense. Appellant admitted drinking on the date in question but denied having driven. Appellant conceded that his license was suspended at that time and maintained that he did not drive while his license was under suspension. Appellant stated that many friends borrow

his pick-up truck from time to time. Appellant said that when he went to Ms. Ayres' house on the date in question, she asked him to leave because she did not want Appellant to wake up her children. Appellant agreed and walked back home, which Appellant indicated was a short distance away. Appellant further stated that he had taken sleep medication shortly before his encounter with police, so he was confused concerning some of Corporal Funk's questions.

At the conclusion of trial, the court convicted Appellant of DUI and driving with a suspended license. The court sentenced Appellant on March 18, 2021, to 5 days to 6 months' imprisonment for DUI, and a consecutive 60 days' imprisonment for driving with a suspended license. On April 22, 2021, Appellant filed a petition for leave to file an appeal *nunc pro tunc*, which the court granted the next day. On May 25, 2021, Appellant filed a second petition for leave to file an appeal *nunc pro tunc*, which the court denied on May 28, 2021. On June 1, 2021, Appellant filed a motion for reconsideration, wherein counsel described the reasons for his failure to file the appeal *nunc pro tunc*. On June 2, 2021, the court granted the motion for reconsideration and permitted Appellant to file a notice of appeal *nunc pro tunc*, which Appellant timely filed that day. On June 10, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises the following issues for our review:

> Did the trial court err by denying [Appellant]'s motion to dismiss the charges, when the Commonwealth prejudiced

[Appellant] by filing the charges against him more than five days after his arrest, as required by the Rules of Criminal Procedure, thus preventing him from obtaining exculpatory evidence?

Did the trial court err by denying [Appellant's] motion to dismiss the charges for the Commonwealth's entry into his home and interrogation of him without a warrant?

Did the trial court err in finding [Appellant] guilty of the charges against him, when the evidence was insufficient to sustain a conviction?

(Appellant's Brief at 4).

In his first issue, Appellant argues that the Commonwealth was required to file charges against him within five days of his release from arrest, in accordance with Rule 519(B). Appellant asserts that it is undisputed that the Commonwealth failed to comply with this rule. Appellant maintains the 31-day delay caused him prejudice in light of the lack of direct evidence showing that Appellant had driven on the date in question. Appellant claims that had the Commonwealth timely filed charges against him, he could have obtained video footage from the bar which might have shown that Appellant was walking that night, but the bar only keeps the video footage for seven days. Appellant complains that the trial court relied on Appellant's prior interactions with police to find that Appellant "should have been aware" that criminal charges were forthcoming. Appellant claims his encounter with police could have reasonably led Appellant to believe the Commonwealth might charge him with a variety of offenses such as public drunkenness or disorderly conduct, but he could not begin to prepare a defense without knowing the actual

charges against him. Appellant insists he should not bear the burden of gathering evidence in his defense before charges are even filed. Appellant stresses that the five-day limit of Rule 519(B) exists to prevent the kind of due process violation that occurs from a significant delay in filing charges. Appellant concludes the court erred in deciding he did not suffer prejudice, and this Court must reverse his convictions and vacate the judgment of sentence. We disagree.

Pennsylvania Rule of Criminal Procedure 519 provides:

**Rule 519.  Procedure in Court Cases Initiated by Arrest Without Warrant**

\* \* \*

**(B)  Release**

(1)  The arresting officer shall promptly release from custody a defendant who has been arrested without a warrant, rather than taking the defendant before the issuing authority, when the following conditions have been met:

(a)  the most serious offense charged is a misdemeanor of the second degree or a misdemeanor of the first degree in cases arising under 75 Pa.C.S.A. § 3802;

(b)  the defendant poses no threat of immediate physical harm to any other person or to himself or herself; and

(c)  the arresting officer has reasonable grounds to believe that the defendant will appear as required.

(2)  When a defendant is released pursuant to paragraph (B)(1), a complaint shall be filed against the defendant within 5 days of the defendant's release. Thereafter, the issuing authority shall issue a summons, not a warrant of arrest, and shall proceed as provided in Rule 510.

Pa.R.Crim.P. 519(B). Additionally, Pennsylvania Rule of Criminal Procedure 109 provides:

### Rule 109.  Defects in Form, Content, or Procedure

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109.

A complaint filed outside of the prescribed five-day period in Rule 519 warrants dismissal only after a showing that the delay prejudiced the defendant. ***Commonwealth v. Schimelfenig***, 522 A.2d 605 (Pa.Super. 1987), *appeal denied*, 518 Pa. 624, 541 A.2d 1136 (1988) (holding that Commonwealth's failure to file criminal complaint for DUI in timely manner did not warrant dismissal of cases where defendants failed to show prejudice). Absent a showing of prejudice, dismissal is an inappropriate remedy for a Rule 519 violation. ***Commonwealth v. Wolgemuth***, 737 A.2d 757 (Pa.Super. 1999). ***See also Commonwealth v. Revtai***, 516 Pa. 53, 532 A.2d 1 (1987) (holding failure to comply with five-day period in which to serve complaint constitutes procedural defect; such defect, however, does not mandate self-executing remedy of dismissal; rather, defect triggers separate and distinct

analysis under Rule 150 to determine proper remedy).[3]

Instantly, in denying Appellant's pre-trial motion to dismiss for violation of Rule 519(B), the trial court reasoned:

> [Appellant] was arrested and released on November 12, 2019, and the Criminal Complaint against him was filed thirty-one days later, on December 13, 2019. Such noncompliance constitutes a "defect in procedure" for purposes of Rule 109.
>
> \* \* \*
>
> [Appellant's] counsel falls short, however, in demonstrating that [Appellant] has been prejudiced by the delay in filing the Complaint. …
>
> \* \* \*
>
> At oral argument, [Appellant] made much of the fact that the camera system at the bar he was allegedly drinking at automatically deletes the recorded footage every seven days if it is not intentionally preserved. He also alleged that at the time he was released he was "confused" as to why he had been arrested and what had occurred the prior evening (due in large part to heavy intoxication), and that nothing about the situation had been explained to him.
>
> Only under the most impractically expansive, naïve definition of "prejudice" has [Appellant] been harmed by the thirty-one day delay in filing the Criminal Complaint, and, given [Appellant's] prior relationship with the criminal justice system, his alleged confusion is not credible.

(Order and Opinion denying Appellant's Pre-Trial Motions, filed 8/21/20, at 1-

---

[3] In **Revtai**, **Wolgemuth** and **Schimelfenig**, this Court analyzed the five-day violation under Pa.R.Crim.P. 102(c) and Pa.R.Crim.P. 130(d), which are predecessors to Rule 519. The language in Rule 102(c) and Rule 130(d) is substantively similar to Rule 519(B)(2). Pa.R.Crim.P. 150 is the predecessor to Rule 109. Those rules are also substantively similar.

3) (footnote omitted).

Among other things, the court noted that Appellant has a history of DUI offenses. The court stated that at the time of Appellant's arrest, he knew his defense would have been that nobody saw him drive, and he did not need the criminal complaint to begin finding witnesses to support his defense. If Appellant believed a video from the bar would have aided his defense, he had ample time after his arrest to secure it, particularly where Appellant is an employee at Johnny's Bar. (*Id.* at 3). In sum, the court found that "[Appellant] fail[ed] to identify any alleged exculpatory evidence that existed in the five-day period after his release that he both could not have known he would need prior to the filing of the Criminal Complaint and that would have been lost in the thirty-one day period prior thereto." (*Id.* at 4).

We agree with the trial court that Appellant cannot demonstrate prejudice on this record. Although Appellant claims video surveillance from the bar could have contained potentially exculpatory evidence, Appellant offered no evidence of precisely where surveillance videos at/around the bar are located or the direction they faced to indicate whether any video footage would have even captured Appellant's journey to/from Ms. Ayres' house or had a view of the adjacent firehall where Appellant's vehicle was ultimately parked. Absent more, Appellant's blanket statement that the surveillance video footage could have yielded exculpatory evidence is merely speculative. Additionally, while the trial court mentioned Appellant's prior DUI offenses,

the court's analysis read in its entirety makes clear the court did not base its prejudice determination solely on Appellant's prior record. Further, Appellant admitted that he remembered very little from the night at issue. To the extent Appellant complains he could have obtained more witnesses from the bar who might have seen Appellant walking to/from Ms. Ayres' house, Appellant's lack of memory would be to blame for the failure to secure those witnesses—not any delay in the filing of the criminal complaint. Under these circumstances, we agree with the trial court that Appellant has not shown prejudice to warrant the dismissal of the charges for violation of Rule 519(B). **See Wolgemuth, supra**.

In his second issue, Appellant argues that the police unlawfully entered his apartment without an arrest warrant. Although Corporal Funk might have believed he was entering a common entryway, Appellant asserts that there is no "good faith" exception to the warrant requirement in Pennsylvania. Appellant claims there were no exigent circumstances present to justify Corporal Funk's entry into his apartment without a warrant. Appellant submits that all statements he made to police should be suppressed as a result of the unlawful entry.

Appellant further maintains the police failed to issue him **Miranda**[4] warnings. Appellant suggests that he was in police custody before he admitted

---

[4] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to drinking because Appellant felt compelled to comply with police directives after Corporal Funk had entered Appellant's residence and asked Appellant to come outside. Appellant stresses that the officers did not tell Appellant he was free to go at any point in time. Under the circumstances where police entered Appellant's home without a warrant, escorted him outside, and asked him incriminating questions, Appellant submits a reasonable person would not have felt free to leave. Appellant concludes the court should have suppressed his statements to police. We disagree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27.

Initially, we observe that Appellant did not raise any issue related to the lack of *Miranda* warnings in his pre-trial motion filed on July 13, 2020, or during argument at the pre-trial motion hearing. (*See* Appellant's Omnibus Pre-Trial Motions, filed 7/13/20, at unnumbered pp. 3-4); (N.T. Pre-Trial

Motion Hearing, 8/6/20, at 23-24). Additionally, Appellant's Rule 1925(b) statement does not raise any challenge to the lack of **Miranda** warnings. (**See** Rule 1925(b) Statement, filed 7/2/21, at 1) (stating: "The [c]ourt erred by denying [Appellant's] motion to dismiss the charges for the Commonwealth's entry into Appellant's home and interrogation of [Appellant] without a warrant"). Thus, Appellant has not properly preserved a challenge to the lack of **Miranda** warnings.[5] **See Commonwealth v. Malloy**, 579 Pa. 425, 856 A.2d 767 (2004) (holding appellant waived issue that he failed to raise and litigate in suppression motion and during suppression hearing). **See also Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998) (stating general rule that issues not raised in Rule 1925(b) statement are waived on appeal).

Regarding Appellant's challenge to the lack of an arrest warrant, it is well-settled that "[i]n a private home, searches and seizures without a warrant are presumptively unreasonable. Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the

---

[5] We observe that at the beginning of trial, the parties mentioned an outstanding motion *in limine* filed by Appellant that involved a challenge to Appellant's statements to police. The motion *in limine* does not appear in the certified record or on the docket entries, and it is not entirely clear from the discussion on the record at trial what the grounds for the motion were. Nevertheless, even if the motion *in limine* raised a challenge to Appellant's statements to police based on a lack of **Miranda** warnings, that claim would still be waived on appeal for failure to include it in Appellant's Rule 1925(b) statement. Indeed, the trial court opinion contains no discussion regarding the lack of **Miranda** warnings in this case. (**See** Trial Court Opinion, filed July 19, 2021, at 11-17).

Fourth Amendment." ***Commonwealth v. Roland***, 535 Pa. 595, 599, 637 A.2d 269, 270 (1994) (internal citations and quotation marks omitted). Nevertheless, "a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." ***Commonwealth v. Enimpah***, 630 Pa. 357, 364, 106 A.3d 695, 698 (2014). "[I]f the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." ***Id.*** at 364, 106 A.3d at 699.

> The Commonwealth may concede the privacy interest, choosing to contest only the legality of police conduct; if it does so, the defendant's "reasonable expectation of privacy" need not be established. However, if the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest, the burden of establishing the contrary is on the defendant.

***Id.*** at 368, 106 A.3d at 701. ***See also Commonwealth v. Reed***, 851 A.2d 958 (Pa.Super. 2004), *appeal denied*, 582 Pa. 607, 871 A.2d 190 (2005) (holding appellant had no legitimate expectation of privacy in hallway or stairs of his apartment building, which were common areas under law).

Instantly, the record adduced at the suppression hearing did not make clear whether the entryway and stairs on which Corporal Funk traversed were Appellant's private property or a common area in a building with multiple units. When Corporal Funk entered past the unhinged door, he believed multiple units were at the top of the stairs. But when Corporal Funk noticed personal belongings on the stairs, he stopped ascending, in case the stairway

- 14 -

was entirely part of Appellant's private residence. Corporal Funk testified that "[w]hen [he] called out to [Appellant], [he] still had no idea whether there was more than one person resid[ing] up there or if there was just him." (N.T. Pre-Trial Motion Hearing, 8/6/20, at 21-22). Notably, Appellant testified at the pre-trial motion hearing but did not elicit any testimony concerning whether the area in which Corporal Funk entered was part of Appellant's private residence. (*See id.* at 4-13). The Commonwealth also did not concede the privacy interest during the suppression hearing. As there was some dispute as to whether the area entered by Corporal Funk was private or a common area, Appellant had the burden of establishing a legitimate expectation of privacy in the area Corporal Funk entered. *See Enimpah, supra*. To the extent that the hallway and stairs were common areas, Appellant had no reasonable expectation of privacy for which he could succeed on his suppression claim. *See Reed, supra*.

Moreover, we emphasize that the record in this case makes clear that police did not enter Appellant's building for the purpose of making an arrest, did not recover any evidence from Appellant's home, and did not actually arrest Appellant until the police had conversations with Appellant **outside** of the building, during which Appellant admitted to drinking and was visibly intoxicated. Although Appellant stresses the illegality of Corporal Funk's entry into his home, any unlawful entry is not what led to Appellant's statements to police. Had Corporal Funk knocked on Appellant's door or called his name

- 15 -

from the outside and asked Appellant to come down and speak to the officers, the same conversation would have taken place. The facts of this case are more akin to a scenario in which police would have inevitably discovered evidence that was initially found via an unlawful search. *See, e.g., Commonwealth v. Williams*, 2 A.3d 611 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 585, 19 A.3d 1051 (2011) (explaining that inevitable discovery doctrine permits introduction of evidence that inevitably would have been discovered through lawful means). Under these circumstances, suppression of Appellant's statements to police was not warranted.[6] Thus, Appellant's second issue merits no relief.

In his third issue, Appellant argues there was no direct evidence establishing that he drove on the date in question. Appellant asserts that Ms. Ayres did not see Appellant drive away from her home. Appellant claims that Mr. Noreiga admitted at trial that he was the one who drove Appellant's vehicle. Appellant insists the court cannot consider as part of its sufficiency analysis, the statements Appellant made to police where those statements were illegally obtained.[7] Appellant maintains the testimony that the hood of

---

[6] Although our rationale for affirming the denial of Appellant's suppression motion differs from that of the trial court, we can affirm on any basis. *See Commonwealth v. Gatlos*, 76 A.3d 44, 62 n.14 (Pa.Super. 2013).

[7] We reject this contention outright. *See Commonwealth v. Haynes*, 116 A.3d 640 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1199 *(Footnote Continued Next Page)*

Appellant's car was neither warm nor cold "was presented with such lack of specificity that it should be inherently suspect." (Appellant's Brief at 18). Likewise, Appellant complains the testimony concerning the tire tracks was speculative and should have been rejected. (*Id.* at 19-20).[8] Appellant contends the court improperly credited the speculative testimony from the police officers and ignored the testimony from Appellant's friend, who admitted driving the vehicle on the date in question. Appellant concludes the evidence was insufficient to sustain his convictions, and this Court must reverse his convictions and vacate his judgment of sentence. We disagree.

Preliminarily, the distinction between a claim challenging the sufficiency of the evidence and a claim challenging the weight of the evidence is critical. ***Commonwealth v. Widmer***, 560 Pa. 308, 318, 744 A.2d 745, 751 (2000).

> A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the

_____

(2015) (explaining that in conducting sufficiency of evidence review, we view all evidence admitted—even improperly admitted evidence).

[8] To the extent Appellant argues that the court should have stricken testimony about how hot/cold the hood of Appellant's car should have been and regarding the tire tracks where the court did not qualify any of the testifying officers as expert witnesses, that claim is waived where Appellant made no objection to the officers' testimony at the time it was offered. (***See*** N.T. Trial, 1/29/21, at 16-17, 36, 46). ***See also*** Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal); ***Commonwealth v. Bedford***, 50 A.3d 707, 714 (Pa.Super. 2012) (*en banc*), *appeal denied*, 618 Pa. 680, 57 A.3d 65 (2012) (reiterating that party must make timely and specific objection to preserve issue for appellate review).

evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 319-20, 744 A.2d at 751-52 (internal citations and quotation marks omitted). *See also Commonwealth v. Wilson*, 825 A.2d 710 (Pa.Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence).

Instantly, in its Rule 1925(a) opinion, the court noted: "As opposed to a sufficiency of the evidence claim, what [Appellant] is really raising is a weight of the evidence claim, as the only way he could win a sufficiency claim is if the [c]ourt credited the testimony of himself and Mr. Noreiga over the testimony of Corporal Funk, Patrolman Stuller, and [Officer] Young." (Trial Court Opinion at 18). We agree with the court that Appellant's issue as presented on appeal is more properly characterized as a weight challenge, where Appellant is essentially arguing that the court should have found the defense witnesses more credible than those of the Commonwealth.

Appellant, however, failed to raise any objection to the weight of the evidence in the trial court. Therefore, Appellant's claim is waived. **See** Pa.R.Crim.P. 607(A) (stating that defendant must raise weight claim with trial judge in first instance). **See also Commonwealth v. Cox**, 231 A.3d 1011, 1018 (Pa.Super. 2020) (stating weight challenge must be preserved either in post-sentence motion, written motion before sentencing, or orally prior to sentencing; appellant's failure to avail himself of any of prescribed methods for presenting weight issue to trial court constitutes waiver of that claim). Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Lazarus joins this memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/02/2022</u>