J-S16035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON SMITH | : | |
| | : | |
| Appellant | : | No. 1600 EDA 2022 |

Appeal from the PCRA Order Entered June 15, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004956-2015

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED OCTOBER 10, 2023**

Brandon Smith (Appellant) appeals from the order denying his petition filed under the Post Conviction Relief Act (PCRA)[1] after his jury convictions of second-degree murder, robbery, conspiracy to commit robbery, and possession of an instrument of crime (PIC).[2]  On appeal, Appellant claims trial counsel was ineffective for failing to file a motion to suppress his statement made to police on the grounds that he was illegally arrested.  We affirm.

On March 12, 2015, Appellant — who was 15 years old at the time — Appellant's 14-year-old brother, Alston Zou-Rutherford (Brother),[3] and their

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(b), 3701(a)(1)(i), 903(a)(1), and 907(a), respectively.

[3] Appellant and Brother are not biological siblings, but referred to each other as such because they share the "same guardian," Victoria Zou (Mother), and had "lived together for a number of years." N.T., 4/20/17, at 63-64.

15-year-old friend, Tyfine Hamilton, planned to commit a robbery together. *See* N.T., 4/20/17, at 67; Trial Ct. Op., 2/22/18, at 5 n.6.  Brother was carrying a gun inside his bookbag, which he later gave to Hamilton.  *See* N.T., 4/20/17, at 67, 72-73.  After about 20 minutes of searching for a potential victim in the area of 6400 Woodcrest Street in Philadelphia, Pennsylvania, the three saw an "old man," James Stuhlman (Victim), walking a dog.  N.T., 4/19/17, at 205, 208.  Appellant and Hamilton approached Victim while Brother stood behind them as a lookout.  *Id.* at 205.  Hamilton was "waving [the] gun" and told Victim to "empty out his pockets[.]"  N.T., 4/20/17, at 76.  When Victim attempted to grab the gun, Hamilton shot Victim and the three assailants ran from the scene.  *See id.* at 77-78.

The PCRA court summarized the following relevant underlying facts:

> [On March 17 and 18, 2015, Philadelphia] Police Officers [Thomas D'Alesio and Tritz[4]] reviewed surveillance footage of the incident . . . and noted that the suspects were three young males. One was carrying a very distinctive bright red backpack with a black bottom and black cords hanging down the center.  The other two males were wearing blue sneakers, one pair a brighter blue than the other.

> [O]n March 18, 2015, [after viewing surveillance video, the o]fficers observed a group of young males walking a short distance from the scene of the crime.  One of the males was carrying a bright red backpack that ["looked like the exact, same backpack" as] the one in the surveillance video.  Another male was wearing bright blue sneakers that matched those worn by one of the males on the surveillance video.

---

[4] Officer Tritz's first name is not apparent from the record.

The males stopped at a property on the 6500 block of Girard Ave. Police stopped the males[ and took them] in for questioning. [The male carrying the bright red backpack was identified as Brother].

A few hours later, [while officers were holding the house for a search warrant,] Appellant walked into [the home on the 6500 block of] West Girard Ave., approached police officers, and asked them for the whereabouts of [B]rother. [Appellant], who was also a young male, was then brought in for questioning.

PCRA Ct. Op., 8/19/22, at 2-3 (paragraph breaks added); *see also* N.T., 4/19/17, at 144-47, 155.

Police brought Brother to the Southwest Detectives Division at 55th and Pine Streets to be questioned. *See* N.T., 4/20/17, at 20. During this interview, Brother confessed to robbing Victim with two other males, whom he initially identified as "Jay" and "Nick." *See id.* at 28. Toward the conclusion of the interview, which ended at 9:15 p.m., Brother admitted "Jay" and "Nick" were, in fact, Hamilton and Appellant, respectively. *See id.* at 25-26, 28-30.

Meanwhile, at approximately 6:30 p.m., officers transported Appellant to the Homicide Unit at 8th and Race Streets. *See* N.T., 4/19/17, at 188-89. Around 9:30 p.m. that same night — after the completion of Brother's interview — Philadelphia Police Detectives Thomas Gaul and Thorsten Lucke, questioned Appellant.[5] *Id.* at 189-90. The officers read Appellant *Miranda*[6]

---

[5] Philadelphia Police Sergeant Robert Wilkins was also present for portions of the interview. N.T., 4/19/17, at 189.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warnings and he confessed to conspiring with Brother and Hamilton to commit a robbery with a firearm. *Id.* at 190-91, 194-96, 203-09.[7]

Appellant was then charged with second-degree murder, conspiracy to commit third-degree murder,[8] robbery, conspiracy to commit robbery, and PIC. Joshua E. Scarpello, Esquire (Trial Counsel) entered his appearance and filed a motion to suppress Appellant's statement to police, arguing Appellant did not receive *Miranda* warnings, and the police did not allow him to speak with an attorney or an interested adult before interrogating him. *See* Appellant's Motion to Suppress Physical Evidence, 3/28/17, at 2 (unpaginated).

The trial court held a suppression hearing on April 18, 2017, where Detective Gaul, Detective Lucke, and Appellant testified. Detective Gaul stated that on March 18, 2015, Appellant "was brought into the homicide unit with multiple other individuals" "for investigation" and noted "[h]e wasn't free to leave." *See* N.T. Jury Trial Vol. 1, 4/18/17, at 5-6, 174. Around 9:30 p.m., Detective Gaul had "information that [Appellant] was possibly one of the individuals involved" in the incident. *Id.* at 7. The detectives read Appellant his *Miranda* rights and contacted Mother to inform her Appellant was a

_____

[7] In his statement to police, Appellant refers to Tyfine Hamilton as "Tavon" and Brother (Alston Zou-Rutherford) as "Austin." *See* N.T. 4/19/17, at 211, 222.

[8] 18 Pa.C.S. §§ 903/ 2502(c). This charge was later *nolle prossed*. *See* Trial Disposition and Dismissal Form, 9/19/17, at 1.

"suspect" in the murder and obtain her permission to interview him. *Id.* at 8, 163-64. After Appellant waived his ***Miranda*** rights and Mother gave detectives permission to speak with him, Appellant proceeded to explain the events leading up to Victim's murder. *Id.* at 8, 172-73, 180. Between 10:20 p.m. on March 18th and 12:30 a.m. on March 19th, the detectives documented Appellant's statement in writing and on video. *Id.* at 8, 158. During the detective's testimony, the following exchange occurred:

> [Trial Counsel]: When you were done completing the interview, did you start the formal arrest process? Did you tell [Appellant] he was formally under arrest and charged with robbery and murder at that point?
>
> [Detective Gaul]: As far as doing a[n arrest] report, that wasn't completed but it was my intention to arrest [Appellant] at that time but I had to go through the process of reviewing it with [the Commonwealth.] He might have been charged at a later time. He was probably charged either later that day or the next day.

*Id.* at 174-75.

Detective Lucke then testified that he spoke with Mother on the phone while he was at the police station. N.T., 4/18/17, at 183-84. Detective Lucke stated he informed Mother he needed "her permission to speak with [Appellant] in reference to the ongoing investigation" of Victim's murder. *Id.* at 184. He also told Mother the police were not only speaking with Appellant, but that he "was one of the young men [they] were looking to speak to . . . in an effort to determine everybody's involvement in [the] incident." *Id.* at 185.

Appellant then testified several times that he "wanted to talk to the police[,]" and would have spoken with them regardless of Mother's

permission. *See* N.T., 4/18/17, at 263, 265-68, 277. Appellant "want[ed] to get this off [his] chest" and stated, "I believe the truth will set you free. So that is why I was [at the police station], to tell the truth and hopefully I will get a second chance[.]" *Id.* at 271, 278. Over the course of the hearing, Appellant also attested multiple times that he "turned [himself] in[.]"[9] *See id.* at 263, 265-66, 270, 277-78.

The trial court denied Appellant's motion to suppress, and this matter proceeded to a two-day trial commencing on April 19, 2017.[10] The jury found Appellant guilty of second-degree murder, robbery, conspiracy to commit robbery, and PIC. On September 19th, the trial court sentenced Appellant to an aggregate term of 30 years to life incarceration followed by a term of 10 years' probation.

On October 18, 2017, Trial Counsel filed a timely notice of appeal and a motion to withdraw from representation, which the trial court granted. *See* Defendant's Motion to Withdraw As Counsel, 10/18/17, at 2 (unpaginated); Order, 10/24/17. The court then appointed Karl Schwartz, Esquire (Appeal Counsel), to represent Appellant on direct appeal.

---

[9] Despite Appellant's insistence that he "turned [himself] in[,]" Detective Gaul's testimony reflects police took Appellant into custody. *See* N.T. 4/18/17, at 6, 263.

[10] The order denying Appellant's motion to suppress does not appear in the certified record. The criminal docket reflects the trial court denied this motion on April 18, 2017. *See* Criminal Docket at 10.

On direct appeal, Appellant challenged the trial court's order denying his motion to suppress and argued his sentence was unconstitutional under the Eighth Amendment to the United States Constitution. *Commonwealth v. Smith*, 210 A.3d 1050, 1057 (Pa. Super. 2019), *appeal denied*, 296 EAL 2019 (Pa. Oct. 28, 2019). On May 14, 2019, this Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court later denied his petition for allowance of appeal. *See id.* at 1054.

On January 21, 2020, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed Gina Amoriello, Esquire (PCRA Counsel) to represent him. PCRA Counsel then filed an amended petition raising the following claim: Trial Counsel was ineffective for failing to move to suppress Appellant's statement to police on the grounds that he was arrested illegally and without probable cause. Appellant's Amended PCRA Petition, 11/16/20, at 3 (unpaginated). On February 23, 2022, the Commonwealth filed a response whereby it acknowledged "the record is unclear regarding the circumstances of [Appellant] being stopped and transported" to the police station and it believed an evidentiary hearing was necessary. *See* Commonwealth's Response Not Opposing An Evidentiary Hearing, 2/23/22, at 1.

On May 12, 2022, the PCRA court held an evidentiary hearing. The Commonwealth presented Philadelphia Police Officer Ryan Daut who testified that on March 18, 2015, he was securing the West Girard Avenue home where Brother and other individuals were taken in for questioning, while other officers applied for a search warrant. *See* N.T., 5/12/22, at 5-6. While there,

Appellant approached the home "looking for his brother[.]" *Id.* at 6. After obtaining Appellant's name, Officer Daut called the Homicide Unit and was instructed "to bring [Appellant] down to" the police station. *Id.* at 6-7. Officer Daut stated that at that point, Appellant was not free to leave. *Id.* at 15-16. The officer patted Appellant down and transported him to the station in a police vehicle. *Id.* at 15, 21. Officer Daut noted he only filled out a "transport 48" police form "to take him down" to the station. *Id.* at 12. Additionally, he stated he did not fill out a "75-48A[,]" form, which the police use when they "are stopping an individual for reasonable suspicion[.]" *Id.* at 12-13. Officer Daut explained: "I don't think we were stopping to detain [Appellant] or arrest him. I think it was more so to take him down, to give a statement to Homicide or be interviewed by Homicide." *Id.* at 12.

PCRA Counsel then presented Trial Counsel, who stated he represented Appellant leading up to and during his trial. *See* N.T., 5/12/22, at 25. Trial Counsel testified that he filed a motion to suppress challenging "the voluntariness of [Appellant's] statement primarily because of [his] age and the fact that he didn't speak with [M]other prior to the interview." *Id.* at 26. He recalled that at the time Appellant was taken into custody, "he was brought in, along with other juveniles that were there, for questioning, not under arrest but for questioning[.]" *Id.* at 30.

When PCRA counsel asked Trial Counsel why he only filed a motion to suppress based on voluntariness, he stated: (1) Brother admitted he and Appellant were involved in the robbery before officers interviewed Appellant;

(2) he believed the officers interviewing Brother informed the officers interviewing Appellant of this statement; (3) based on Brother's statement, he believed police had reason to question Appellant; (4) he "was more focused on the bright-line issue of the fact that [M]other was trying to speak with [Appellant] and that never happened[;]" (5) he "argued what [he] thought was the stronger issue[;]" and (6) he did not think a motion to suppress Appellant's statement based on an illegal arrest would have been successful. *See* N.T., 5/12/22, at 32-33, 36, 40. Lastly, Trial Counsel acknowledged that if Appellant's statement was suppressed at trial "it would have made the case better[,]" but conceded he "was working under the constraints of [Brother] being a cooperating witness[.]" *Id.* at 35.

Appellant then testified at the hearing that the police "already had statements from all of the codefendants" by the time he spoke to police, and "there was nothing [he] could argue at the time." N.T., 5/12/22, at 56. He also claimed he "never wrote a statement[,]" "the cops wrote the statement[,]" and he "never signed the statement with [his] signature[.]" *Id.* at 56-57.

The Commonwealth and PCRA Counsel stipulated at the hearing that if the trial court had suppressed Appellant's statement at trial, the Commonwealth would have called Brother to testify as a rebuttal witness. *See* N.T., 5/12/22, at 23.

After the hearing, the PCRA court issued a notice of dismissal pursuant to Pa.R.Crim.P. 907. Appellant did not file a response. On June 15, 2022, the

PCRA court dismissed Appellant's petition. Order, 6/15/22. This timely appeal

follows.[11]

On appeal, Appellant raises the following claim:

Did the trial court err in denying post-conviction relief after an evidentiary hearing when Trial Counsel was ineffective for failing to move to suppress Appellant's statement on the grounds [of] illegal arrest when police lacked probable cause to effectuate the arrest?

Appellant's Brief at 4 (some capitalization omitted).

Our standard regarding PCRA appeals is well-settled:

When reviewing the denial of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, a reviewing court is bound by a PCRA court's credibility determinations and its fact-finding, so long as those conclusions are supported by the record. However, with regard to a court's legal conclusions, appellate courts apply a *de novo* standard.

***Commonwealth v. Drummond***, 285 A.3d 625, 633 (Pa. 2022) (footnotes &

quotation marks omitted).

Because Appellant's claim concerns ineffective assistance of counsel, we

also are guided by the following:

To prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than

_____

[11] Appellant complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement.

the course actually pursued. To satisfy the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must adduce sufficient evidence to overcome this presumption.

**Drummond**, 285 A.3d at 634 (footnotes & quotation marks omitted). We further note: "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." **Commonwealth v. McGarry**, 172 A.3d 60, 70 (Pa. Super. 2017) (citation omitted).

Relevant to Appellant's claim, we note:

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted). Probable cause is

made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a **probability**, and not a **prima facie** showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Bozeman*, 205 A.3d 1264, 1277 (Pa. Super. 2019)

(citation omitted & emphasis in original).

Further:

> The test for determining whether a suspect is being
> subjected to custodial interrogation so as to necessitate
> *Miranda* warnings is whether he is physically deprived of
> his freedom in any significant way or is placed in a situation
> in which he reasonably believes that his freedom of action
> or movement is restricted by such interrogation.

Said another way, police detentions become custodial when,
under the totality of the circumstances, the conditions and/or
duration of the detention become so coercive as to constitute the
functional equivalent of arrest.

> The factors a court utilizes to determine, under the totality
> of the circumstances, whether a detention has become so coercive
> as to constitute the functional equivalent of arrest include: the
> basis for the detention; its length; its location; whether the
> suspect was transported against his or her will, how far, and why;
> whether restraints were used; whether the law enforcement
> officer showed, threatened or used force; and the investigative
> methods employed to confirm or dispel suspicions.

*Commonwealth v. Baker*, 24 A.3d 1006, 1019-20 (Pa. Super. 2011)

(citations omitted). "Custodial interrogation does not require that police

'make a formal arrest, nor that the police intend to make an arrest.'"

*Commonwealth v. Gonzalez*, 979 A.2d 879, 889 (Pa. Super. 2009)

(citations & emphasis omitted).

In his sole claim on appeal, Appellant avers Trial Counsel was ineffective

for failing to file a motion to suppress his statement on the grounds of an

illegal arrest. *See* Appellant's Brief at 11-12. Appellant claims that "[b]ased

on the testimony presented both at trial and at the suppression hearing, the

Commonwealth could not have established probable cause" for his arrest. *Id.* at 11. Appellant maintains the PCRA court's statement that "even if the initial arrest was illegal, Appellant would have inevitably been taken into custody anyway . . . is clearly not the standard" to apply to an arrest made without probable cause. *See id.* at 12. Appellant insists his statement should have been suppressed as "fruit of the poisoned tree." *Id.* (citation omitted).

The PCRA court concluded Appellant was not entitled to relief. Specifically, relying on its findings of fact from the May 12, 2022, evidentiary hearing, the court noted when police brought Appellant in to be interviewed, they were aware he was related to Brother — who was brought in earlier that day. *Id.* at 5. Based on Brother's initial statements, police "believed [Brother committed the crime] with somebody . . . in his family[.]" *Id.* The court determined it was "reasonable" for police to take Appellant to the police station as a "material witness[.]" *Id.* It then pointed out that police did not begin their interview with Appellant until after Brother named him as a co-conspirator, thus, Appellant's involvement in the incident was "inevitable discovery[.]" *Id.* at 5-6. The court stated that "in the end" the police would have interviewed him "no matter what[.]" *Id.* at 5. Regarding Trial Counsel's motion to suppress, the court detailed that counsel "focused on the point that he believed was the strongest" and did not think he would be successful if he had argued that Appellant was illegally arrested. *Id.* The court confirmed that had Trial Counsel filed a motion on these grounds, it would not have prevailed. *Id.* at 6. Lastly, the court found Appellant failed to establish

prejudice "since there was evidence independent of [his] statement[;]" namely, Brother's confession identifying Appellant as a co-conspirator. *Id.* at 5-6.

We agree with the PCRA court that Appellant's ineffectiveness claim must fail, and he is not entitled to relief. We note Appellant presents his argument solely from the purview that police illegally arrested him.[12] The record demonstrates that he was not arrested until after he made his statement. However, while Appellant may not have been under arrest prior to this, the totality of the circumstances support that he was subject to a custodial interrogation — which requires police to have probable cause that a crime has been or is being committed. *See Bozeman*, 205 A.3d at 1277; *Downey*, 39 A.3d at 405; *Baker*, 24 A.3d at 1019-20. Officer Daut testified at the May 12, 2022, evidentiary hearing that he was "instructed" by the Homicide Unit to transport Appellant to the station for questioning. *See* N.T., 5/12/22, at 6-7. Officer Daut proceeded to pat Appellant down and transport him in a police vehicle to be questioned. *See id.* at 21. The officer admitted that at that point, Appellant was not free to leave. *See id.* at 15-16.

_____

[12] Notably, Appellant does not point to anywhere in the record to support his contention that he was placed under arrest before the completion of his custodial interview with the detectives. He simply states that the suppression hearing and trial testimony do not support a finding of probable cause for arrest. *See* Appellant's Brief at 11. However, the record — which also includes the May 12, 2022, evidentiary hearing testimony and Appellant's arrest report dated **after** the interview — belies this assertion.

Accordingly, Appellant was in police custody. *See Baker*, 24 a.3d at 1019-20.

The Commonwealth did not present any evidence at the hearing that the officer possessed probable cause to place Appellant in custody. Homicide "instructed" Officer Daut to transport Appellant to the police station at approximately 6:30 p.m. *See* N.T., 5/12/22, at 6-7, 16. At that time, police had not yet secured Brother's confession wherein he identified Appellant as a co-conspirator. *See* N.T., 4/20/17, at 25-26, 28-30. When Officer Daut took Appellant in for questioning, he had the following information: (1) Appellant approached officers and asked where Brother was; (2) Officer Daut called the Homicide Unit "to try and ascertain some information as to who was stopped" earlier that day; (3) Officer Daut gave Homicide Appellant's name; and (4) Homicide instructed the officer to transport Appellant to the station. *See* N.T., 5/12/22, at 6-7, 10-11, 21. Based on this explanation, the totality of the circumstances did not support a reasonable belief that Appellant was committing or had committed a crime. *See Bozeman*, 205 A.3d at 1277. Thus, the officer lacked probable cause to subject Appellant to a custodial interrogation.

Even though police lacked probable cause to interrogate him, we still conclude Appellant's claim does not merit relief. Appellant's statement to police falls under an exception to the exclusionary rule. The remedy for an illegal search or seizure in a criminal case is "exclusion of the fruits of the illegal police conduct[.]" *Commonwealth v. Johnson*, 86 A.3d 182, 187

(Pa. 2014). However, this remedy is subject to exceptions; namely the doctrine of inevitable discovery. The inevitable discovery doctrine

> permits the introduction of evidence that inevitably would have been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful. [This doctrine] considers what would have happened in the absence of the initial search."

*Commonwealth v. Williams*, 2 A.3d 611, 618-19 (Pa. Super. 2010) (emphasis omitted).

Here, Brother confessed his involvement in the robbery, identifying Appellant as a co-conspirator, before police interviewed Appellant. *See* N.T., 4/20/17, at 28-30. Additionally, Appellant has not averred or demonstrated that he would have **not** given a statement to police confessing his involvement in the robbery absent the purported unlawful questioning. In fact, at the April 18, 2017, suppression hearing Appellant testified that he intended to speak with the police and take responsibility for his actions notwithstanding the circumstances of his seizure or interrogation. *See* N.T., 4/18/17, at 263, 265-268, 277 (Appellant testifying that he wanted to speak with the police regardless of police gaining Mother's permission to question him); *see id.* 271, 278 (Appellant indicating he wanted to "tell the truth" and "get this off [his] chest"); *see also id.* at 263, 265-66, 270, 277-78 (Appellant claiming multiple times that he "turned [himself] in").

Thus, the police would have either brought Appellant in for questioning or arrested him shortly after Brother identified him as a co-conspirator. Accordingly, this argument would grant him no basis for relief. *See*

*Drummond*, 285 A.3d at 634; *McGarry*, 172 A.3d at 70; *Williams*, 2 A.3d at 618-19.

Additionally, Appellant failed to establish the remaining two prongs of the ineffectiveness test, and for these reasons, his claim also fails. *See McGarry*, 172 A.3d at 70. Regarding the reasonable basis prong of the test, our Supreme Court has "explained that courts should not inquire as to whether there were other, more logical courses of action counsel could have pursued; rather, the appropriate question is whether counsel's decision had any reasonable basis." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023). Trial Counsel demonstrated he had a reasonable basis for failing to file a motion to suppress on the grounds of an illegal arrest. He chose to focus on what he believed to be a stronger argument — that Appellant was interviewed without an interested adult present. *See* N.T. 5/12/22, at 33, 36. Further, as noted above, the PCRA court stated it would not have granted a suppression motion on this basis. *See* PCRA Ct. Op. at 6. Thus, Appellant has not "prove[n] that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *See Drummond*, 285 A.3d at 634.

Lastly, Appellant has not established that he was prejudiced by Trial Counsel's failure to seek suppression of his statement based upon a purported illegal arrest. Again, as mentioned above, the PCRA court confirmed it would not have granted such a motion. *See* PCRA Ct. Op. at 6. Further, PCRA Counsel and the Commonwealth stipulated that if Appellant's statement was

suppressed, the Commonwealth would have called Brother as a rebuttal witness at trial. *See* N.T., 5/12/22, at 23. Brother made a statement to the police whereby he identified Appellant as a co-conspirator in the robbery resulting in Victim's death. Accordingly, the Commonwealth would have still introduced evidence with the same content as Appellant's statement.

Because Appellant failed to establish any of the prongs of the ineffectiveness test, his claim fails, and no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2023